UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MARK EDWARDS,

                              Plaintiff,

          v.                                          9:19-CV-0254
                                                            (MAD/ATB)

NEW YORK STATE DEPARTMENT
OF CORRECTIONS AND COMMUNITY
SUPERVISION, et al.,

                              Defendants.
_____

APPEARANCES:

MARK EDWARDS
05-A-1980
Great Meadow Correctional Facility
Box 51
Comstock, NY 12821

MAE A. D'AGOSTINO
United States District Judge

## DECISION AND ORDER

**I.    INTRODUCTION**

      Pro se plaintiff Mark Edwards ("plaintiff") commenced this civil rights action on or about February 21, 2019, with the filing of a complaint, Dkt. No. 1 ("Compl."), accompanied by an application to proceed in the action in forma pauperis ("IFP"), Dkt. No. 2, and a motion for a preliminary injunction, Dkt. No. 4 ("PI Motion"). The Court issued an Order on February 22, 2019, closing the action after concluding that, because plaintiff had not provided a completed IFP application or paid the required filing fee, the action had not been properly commenced.

Dkt. No. 5. On or about March 18, 2019, plaintiff filed a second IFP application, Dkt. No. 6, and the Clerk of the Court reopened the action on that date.[1] The Clerk has now forwarded plaintiff's second IFP application, the complaint, and motion for preliminary injunction to the Court for review.

## II. IFP APPLICATION

Section 1915 of Title 28 of the United States Code ("Section 1915") "permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged."[2] *Cash v. Bernstein*, No. 09-CV-1922, 2010 WL 5185047, at *1 (S.D.N.Y. Oct. 26, 2010). "Although an indigent, incarcerated individual need not prepay the filing fee at the time . . . of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts." *Cash*, 2010 WL 5185047, at *1 (citing 28 U.S.C. § 1915(b); *Harris v. City of N.Y.*, 607 F.3d 18, 21 (2d Cir. 2010)).

Upon review, the Court finds that plaintiff has submitted a completed and signed IFP application, Dkt. No. 6, that demonstrates economic need. *See* 28 U.S.C. § 1915(a)(2). Plaintiff has also filed the inmate authorization form required in this District. Dkt. No. 8. Accordingly, plaintiff's IFP application is granted.

---

[1] Plaintiff also filed a new inmate authorization form, which is required in this District by prisoner-litigants seeking IFP status, Dkt. No. 8, as well as an "addendum" to his complaint, Dkt. No. 7.

[2] Section 1915(g) prohibits a prisoner from proceeding IFP where, absent a showing of "imminent danger of serious physical injury," a prisoner has filed three or more actions that were subsequently dismissed as frivolous, malicious, or failing to state a claim upon which relief may be granted. 28 U.S.C. § 1915(g). The Court has reviewed plaintiff's litigation history on the Federal Judiciary's Public Access to Court Electronic Records ("PACER") Service. PACER Case Locator, https://pcl.uscourts.gov/pcl/pages/search/findPartyAdvanced.jsf (last visited Apr. 30, 2019). Based on that review, it does not appear that plaintiff had accumulated three strikes for purposes of Section 1915(g) as of the date this action was commenced.

## III. SUFFICIENCY OF THE COMPLAINT

### A. Governing Legal Standard

Section 1915(e) directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that. . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).[3] Thus, even if a plaintiff satisfies the financial criteria to commence an action IFP, it is the court's responsibility to determine whether the plaintiff may properly maintain the complaint that he filed in this District before the Court may permit him to proceed with the action IFP. *See id*.

Likewise, under 28 U.S.C. § 1915A ("Section 1915A"), a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint. . . is frivolous, malicious, or fails to state a claim upon which relief may be granted; or . . . seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A; *see also Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam) (holding that Section 1915A applies "to all civil complaints brought by prisoners against governmental officials or entities regardless of whether the prisoner has paid the filing fee"); *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (finding that both Sections 1915(e)(2)(B) and 1915A provide a basis for screening prisoner's complaints).

---

[3] A complaint is frivolous for purposes of Section 1915 when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

3

In reviewing a pro se litigant's complaint, the Court has a duty to liberally construe the pleadings, *see Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), and should exercise "extreme caution . . . in ordering sua sponte dismissal of a pro se complaint *before* the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983). Therefore, a court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). Although the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'" *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555). Thus, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Id*. (internal quotation marks and alterations omitted).

**B.     Summary of the Complaint**

4

At all times relevant to this action, plaintiff was incarcerated at Great Meadow Correctional Facility ("Great Meadow C.F."), a facility operated by the New York State Department of Corrections and Community Supervision ("DOCCS").[4]  *See generally* Compl. The following facts are as alleged in the complaint.

### 1. Mail Interference/Communication

In or about the third week of December 2018, defendant Great Meadow C.F. Deputy Superintendent of Security Gerard Caron yelled verbal profanities at plaintiff and made a sexual gesture towards plaintiff while plaintiff was being escorted from the Great Meadow C.F. package room.  Compl. at 4.  In response, plaintiff "kept his composure."  *Id.*  Since that incident, plaintiff has experienced "more difficulty than is normal with receiving mail."  *Id.*  Plaintiff cites two examples of mail delivery being delayed.  *Id.*  More generally, plaintiff alleges that he "has been subjected to delays and denials of books and communications from legitimate religious organizations," as well as "catalogs, periodicals, letters from pen-pals, law schools and human rights organizations."  *Id.* at 5.  According to plaintiff, defendant DOCCS Acting Commissioner Anthony Annucci and defendant Great Meadow C.F. Superintendent Chris Miller "are using their influence to have their employees block plaintiff's legitimate communication with the outside world, without lawful justification."  *Id.*  Defendant Annucci has given DOCCS correctional officers "and support staff" permission to tamper with plaintiff's mail.  *Id.* at 6.  Defendant Annucci also denies New York State inmates "fair access to standard technology, i.e. eMail, electronic case filing etc."  Compl. at 5.

---

[4] Although the caption of the complaint includes DOCCS as a defendant, there are no allegations specifically implicating that state agency.  *See generally* Compl.

### 2. Sexual Assault

On or about October 4, 2018,[5] at approximately 6:00PM, plaintiff was sexually molested by an unidentified correctional officer during a pat-frisk search. Compl. at 7-8. "[P]laintiff believes the search was conducted under the orders of defendant Caron . . . based on the comments he made to plaintiff and plaintiff's knowledge of defendant's [sic] Caron's propensity to take part in or encourage homosexual assault against prisoners." *Id.* at 8.

### 3. Plaintiff's Department Records/Inadequate Wages

Plaintiff completed a program in Auburn Correctional Facility at the "Corcraft Industrial woodshop" between May 2014 and July 2015. Compl. at 9. Plaintiff's participation in the program, however, is not reflected in his departmental records, specifically in his "Training Aptitude and Potential Employability Report" ("TAPER"). *Id.* Plaintiff's complaints concerning the absence of this program in his TAPER have been ignored or denied. *Id.* at 9-10.

Defendant Annucci "is also targeting plaintiff – and New York State prisoners in general – with the racist policy of paying only [$0].16 - [$0].45 per hour for critical labor." Compl. at 10. Defendant Annucci has implemented "a racist policy wherein predominantly non-white prisoners are not allowed to benefit from higher paying job titles and are paid extremely low wages and thereby hindering rehabilitation[.]" *Id.* at 11.

For a complete statement of the facts, reference is made to the complaint.

Based on the foregoing allegations, the Court has liberally construed plaintiff's

---

[5] The complaint alleges this incident occurred "[o]n or about October 4, 2019." Compl. at 7. The Court has construed the reference to 201*9* to be a typographical error and the complaint to allege that the incident occurred instead on or about October 4, 201*8*.

complaint to assert the following causes of action: (1) First Amendment mail interference claims against defendants Caron, Miller, and Annucci; (2) a First Amendment "communication" claim against defendant Annucci; (3) First Amendment religious interference claims against defendants Caron, Miller, and Annucci; (4) an Eighth Amendment sexual assault claim against defendant Caron; (5) Fourteenth Amendment due process claims against defendants Miller and Annucci; and (6) a Fourteenth Amendment equal protection claim against defendant Annucci.

### C. Analysis

Plaintiff brings this action pursuant to 42 U.S.C. § 1983 ("Section 1983"), which establishes a cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. "Section 1983 itself creates no substantive rights[ but] provides . . . only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James,* 13 F.3d 515, 519 (2d Cir. 1993).

"Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [Section] 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citing *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991); *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977)). As the Supreme Court has noted, a defendant may only be held accountable for his actions under Section 1983. *See Iqbal*, 556 U.S. at 683 ("[P]etitioners cannot be held liable unless they themselves acted on account of a constitutionally protected characteristic."). In order to prevail on a Section 1983 cause of action against an individual, a plaintiff must show "a tangible connection between the acts of a defendant and the injuries suffered." *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).

With respect to individuals sued based on their supervisory capacities, it is well settled that "vicarious liability is inapplicable to . . . [Section] 1983 suits." *Iqbal* 556 U.S. at 676. Prior to *Iqbal*, the Second Circuit held that supervisory personnel may be considered "personally involved" only if they (1) directly participated in the violation, (2) failed to remedy that violation after learning of it through a report or appeal, (3) created, or allowed to continue, a policy or custom under which the violation occurred, (4) had been grossly negligent in managing subordinates who caused the violation, or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that the violation was occurring. *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (citing *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986)).[3]

### 1. Mail Interference

Prison inmates retain the First Amendment right of free speech to send and receive mail subject to legitimate penological interests. *Hudson v. Palmer*, 468 U.S. 517, 523 (1984); *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003); *Brewer v. Wilkinson*, 3 F.3d 816, 821 (5th Cir. 1993). "[I]n order for an inmate to state a claim for interference with incoming non-legal mail he must show a pattern and practice of interference that is not justified by any legitimate penological concern." *Cancel v. Goord*, No. 00-CV-2042, 2001 WL 303713, at *6 (S.D.N.Y. Mar. 29, 2001) (citing *Rowe v. Shake*, 196 F.3d 778, 782 (7th Cir. 1999)).

---

[3] The Second Circuit has not yet addressed how the Supreme Court's decision in *Iqbal* affected the standards in *Colon* for establishing supervisory liability. *See Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013) (noting that *Iqbal* may have "heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations" but not reaching the impact of *Iqbal* on *Colon* because the complaint "did not adequately plead the Warden's personal involvement even under *Colon*); *see also Hogan v. Fischer*, 738 F.3d 509, 519 n.3 (2d Cir. 2013) (expressing "no view on the extent to which [*Iqbal*] may have heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations[.]" (citing *Grullon*, 720 F.3d at 139)). Absent any authority to the contrary, the Court has applied *Colon* in this case.

Having carefully reviewed plaintiff's complaint with due regard to his pro se status, the Court concludes that plaintiff's mail interference claims must be dismissed. Plaintiff cites only two occasions when his incoming mail was delayed. Compl. at 4. Plaintiff does not, however, include the dates of those instances, so the Court is unable to determine whether those two examples amount to a pattern or practice of interference. In addition, the remainder of the allegations purporting to support a mail interference claim are vague and conclusory. Plaintiff alleges defendant Annucci has implemented an "outdated" mail policy that results in "censoring and restricting mail delivery." *Id.* at 6. Defendant Annucci has also allegedly granted permission to "NYSDOCCS corrections officers and support staff . . . to attack plaintiff's 'Privileged' and 'Regular' mail by creating an environment conducive to mail-tampering and mail-fraud." *Id.* Without any additional allegations articulating the specific interference plaintiff has experienced or additional allegations to support plaintiff's otherwise bare allegation that the interference has been continuous, the complaint fails to state a claim upon which relief may be granted pursuant to Sections 1915(e)(2)(B)(ii) and 1915A(b)(1). *See Garraway v. Griffin*, No. 12-CV-0924, 2013 WL 2105903, at *4 (W.D.N.Y. May 8, 2013) ("Plaintiff's free flow of non-legal mail claim must be dismissed because the allegations fall far short of alleging any type of pattern or practice of mail interference. Conclusory allegations that plaintiff's mail to the Laundry Room was intercepted and that this caused him to contract a skin fungus are simply insufficient to state an actionable First Amendment claim."); *Cancel*, 2001 WL 303713, at *6 ("Because [the plaintiff] only alleges that prison officials withheld his regular mail on one occasion, rather than showing a pattern and practice of such behavior, his First Amendment free speech claim for the withholding of his regular incoming mail is dismissed.").

### 2. Communication

Although prison inmates retain a right under the First Amendment to send and receive information while incarcerated, *Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989); *Turner v. Safley*, 482 U.S. 78, 84 (1987), they do not have a constitutional right to a particular form of communication, including access to the internet or email. *See, e.g., Chatman v. Clarke*, No. 17-CV-0509, 2016 WL 7480426, at *2 (W.D. Va. Dec. 29, 2016); *Holloway v. Magness*, No. 07-CV-0088, 2011 WL 204891, at *7 (E.D. Ark. Jan. 21, 2011); *Yeaman v. Ward*, No. 04-CV-0820, 2005 WL 2396509, at *11 (W.D. Okla. Sept. 28, 2005). Accordingly, any claim in this case arising from allegations that New York State prisoners are refused access to "standard technology" is dismissed for failure to state a claim upon which relief may be granted pursuant to Sections 1915(e)(2)(B)(ii) and 1915A(b)(1).

### 3. Religious Interference

"Prisoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause." *Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003). A prisoner's free exercise rights are balanced against legitimate penological interests. *Ford*, 352 F.3d at 588; *Salahuddin v. Goord*, 467 F.3d 263, 274 (2d Cir. 2006) ("[A] regulation that burdens a[n inmate's right to freedom of religious exercise] passes constitutional muster if its reasonably related to legitimate penological interests"). To state a cognizable free-exercise claim, a complaint must allege facts plausibly suggesting that the defendants' conduct or the prison regulation at issue "substantially

burdens [the plaintiff's] sincerely held religious beliefs."  *Salahuddin*, 467 F.3d at 274-75.[4]  A Court must be wary of "'question[ing] the centrality of particular beliefs or practices to a faith, or the validity of particular litigants' interpretations of those creeds.'"  *McEachin v. McGuinnis*, 357 F.3d 197, 201 (2d Cir. 2004) (quoting *Hernandez v. Comm'r of Internal Revenue*, 490 U.S. 680, 699 (1989)).

With due regard to plaintiff's pro se status, his free exercise claim must be dismissed.  The complaint alleges that plaintiff is "in direct communications with several religious institutions. . . [and] has been subjected to delays and denials of books and communications from legitimate religious organizations, without justification or reasonable notice."  Compl. at 5.  This allegation does not plausibly suggest that any of the defendants' conduct substantially burdened plaintiff's religious beliefs.  Indeed, there are no allegations in the complaint disclosing plaintiff's religion or how the "books and communications" he believes have been withheld from him by prison officials interferes with his religious beliefs or the exercise of any religion.  Accordingly, plaintiff's First Amendment free exercise claim is dismissed for failure to state a claim upon which relief may be granted pursuant to Sections 1915(e)(2)(B)(ii) and 1915A(b)(1).

### 4. Sexual Assault

---

[4] The Second Circuit has yet to decide whether the "substantial burden" test survived the Supreme Court's decision in *Emp't Div. v. Smith*, 494 U.S 872, 887 (1990), in which the Court suggested that application of the test "puts courts in 'the unacceptable business of evaluating the relative merits of differing religious claims.'" *Ford*, 352 F.3d at 592 (quoting *Emp't Div.*, 494 U.S. at 887); *see also Holland v. Goord*, 758 F.3d 215, 220-21 (2d Cir. 2014) (declining to decide whether a prisoner must show, as a threshold matter, that the defendants' conduct substantially burdened his sincerely held religious beliefs in connection with a First Amendment free exercise claim).  In the absence of any controlling precedent to the contrary, the Court has applied the substantial-burden test for purposes of this Decision and Order.

As discussed above, personal involvement is a prerequisite to an award of damages under Section 1983. *Wright*, 21 F.3d at 501. Plaintiff's sexual assault claim in this action is asserted against defendant Caron based on an allegation that defendant Caron ordered the pat-risk search of plaintiff that involved sexual molestation by an unidentified correctional officer. Compl. at 8. Specifically, plaintiff alleges that he "was not able to obtain the names of the corrections officers whom were involved with the sexual[] abus[e] . . .[, h]owever, plaintiff believes the search was conducted under the orders of defendant Caron." *Id.* Furthermore, plaintiff alleges that he "is certain that defendant Caron is responsible due to the comments he made to plaintiff and plaintiff's knowledge of defendant's [sic] Caron's propensity to take part in or encourage homosexual assault against prisoners." *Id.*

Plaintiff's sexual assault claim stems from wholly speculative allegations and therefore must be dismissed. Plaintiff fails to explain what "comments" to which he refers that serves as the basis for his "belie[f]" that defendant Caron ordered the pat-frisk search. To the extent this is a reference the incident described in the complaint that occurred in December 2018, where defendant Caron allegedly directed obscenities at plaintiff, Compl. at 4, such an allegation is not plausible. Plaintiff alleges that the sexual molestation incident occurred on or about "October 4, 201[8]," two months before the incident involving defendant Caron. Without any additional allegations, plaintiff's mere "belie[f]" that defendant Caron ordered the pat frisk does not plausibly suggest that defendant Caron was personally involved in the sexual assault. Accordingly, plaintiff's sexual assault claim is dismissed for failure to state a claim upon which relief may be granted pursuant to Sections 1915(e)(2)(B)(ii) and 1915A(b)(1).

### 5. Due Process

The complaint purports to assert claims based on allegations that plaintiff's TAPER does not reflect his participation in a program while he was incarcerated in Auburn C.F., and that defendant Annucci has promulgated a policy within the DOCCS that provides inadequate wages to prisoners for their labor. Compl. at 9-11. The Court has liberally construed these allegations to assert due process claims.

With due regard to plaintiff's pro se status, his claims must be dismissed. It is well settled that inmates have no constitutionally protected liberty interest in participation in prison programs. *See, e.g., Lee v. Governor of State of N.Y.*, 87 F.3d 55, 58-59 (2d Cir. 1996) (concluding that the plaintiffs had no constitutional right to participate a temporary release program); *Thompson v. LaClair*, No. 08-CV-0037, 2008 WL 191212, at *3 (N.D.N.Y. Jan. 22, 2008) ("Inmates. . . do not have a constitutional right to . . . participate in prison programs."). It follows that plaintiff possesses no constitutional right to have his participation in a particular program reflected in his prison records. In addition, even assuming plaintiff could establish a liberty interest, however, his allegation that neither defendant Miller nor defendant Annucci has "assist[ed] [him] in . . . correct[ing] his record" is not sufficient to plausibly allege their personal involvement. Compl. at 10. It is not clear if, how, or when defendants Miller and Annucci learned that plaintiff's TAPER did not reflect his participation in a work program at Auburn C.F. Furthermore, the complaint fails to allege that defendants Miller and Annucci had the authority to modify plaintiff's TAPER. Accordingly, any due process claim asserted in plaintiff's complaint arising from allegations that plaintiff's TAPER does not accurately reflect plaintiff's prison work history is dismissed for failure to state a claim upon which relief may be granted pursuant to Sections 1915(e)(2)(B)(ii) and 1915A(b)(1).

With respect to plaintiff's allegation that defendant Annucci has promulgated and

13

implemented a DOCCS policy that pays inmates only $0.16-0.45 per hour, inmates are not entitled to be compensated for their labor while incarcerated. *See United States v. Kozminski*, 487 U.S. 931, 943 (1988); *Barlow v. Lopes*, No. 85-CV-0529, 1985 WL 8795, at *1 (D. Conn. 1985) (citing cases). Accordingly, plaintiff's due process claim arising from allegations that he is paid unfair wages is dismissed for failure to state a claim upon which relief may be granted pursuant to Sections 1915(e)(2)(B)(ii) and 1915A(b)(1).

### 6. Equal Protection

The Equal Protection Clause requires that the government treat all similarly situated people alike. *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). It "bars the government from selective adverse treatment of individuals compared with other similarly situated individuals if 'such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" *Bizzarro v. Miranda*, 394 F.3d 82, 86 (2d Cir. 2005) (quoting *LeClair v. Saunders*, 627 F.2d 606, 609-10 (2d Cir. 1980) (emphasis omitted)). As relevant to the allegations giving rise to plaintiff's equal protection claim in this case, to state a cognizable claim for denial of equal protection, the complaint must allege "purposeful discrimination . . . directed at an identifiable or suspect class." *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995) (citation omitted).

Plaintiff alleges that defendant Annucci "is implementing a racist policy wherein predominantly non-white prisoners are not allowed to benefit from higher paying job[s]." Compl. at 11. This conclusory allegation is not sufficient to give rise to a cognizable equal protection claim. There are no allegations in the complaint plausibly suggesting that plaintiff (or any of the "non-white prisoners" to whom the complaint refers) is similarly situated to the

14

unidentified individuals or groups of individuals who may be "benefit[ing[ from higher paying jobs." *See, e.g., Abdur-Raheem v. Wenderlich*, No. 07-CV-6247, 2012 WL 5185605, at *1 (W.D.N.Y. Sept. 19, 2012) ("Plaintiff's failure to allege or identify the existence of any similarly situated group or individuals that have been treated differently from him renders his proposed Equal Protection claim futile."). Moreover, the allegations supporting plaintiff's claim fail to plausibly allege that defendant Annucci's implementation of any DOCCS policy was motivated by racial animus. *See, e.g., Brown v. City of Oneonta, N.Y.*, 221 F.3d 329, 337 (2d Cir. 2000) (determining that one way "a plaintiff can plead intentional discrimination that violates the Equal Protection Clause" is to "allege that a facially neutral statute or policy has an adverse effect and that it was motivated by discriminatory animus"). Accordingly, plaintiff's equal protection claim is dismissed for failure to state a claim upon which relief may be granted pursuant to Sections 1915(e)(2)(B)(ii) and 1915A(b)(1).

### 7. Claims Asserted Against DOCCS

The Eleventh Amendment has long been construed as barring a citizen from bringing a suit against his own state in federal court under the fundamental principle of sovereign immunity. *See, e.g., Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *Edelman v. Jordan*, 415 U.S. 351, 662-63 (1974). State immunity extends not only to the states, but also to state agencies. *See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 142-47 (1993); *McGinty v. N.Y.*, 251 F.3d 84, 95 (2d Cir. 2001) ("The Eleventh Amendment extends immunity not only to a state, but also to entities considered 'arms of the state.'"). Accordingly, any claims in plaintiff's complaint asserted against DOCCS are barred by the Eleventh Amendment and are dismissed pursuant to Sections 1915(e)(2)(B)(i) and 1915A(b)(2). *Ala. v. Pugh*, 438 U.S. 781, 782 (1978); *Feingold*

*v. N.Y.*, 366 F.3d 138, 149 (2d Cir. 2004).

### D. Conditional Dismissal With Leave to Amend

Based upon the foregoing, the Court finds that plaintiff's complaint fails to state one or more claims upon which relief may be granted. In light of plaintiff's pro se status, the Court will afford plaintiff the opportunity to file an amended complaint not inconsistent with this decision.[5] *Gomez v. USAA Fed. Savings Bank*, 171 F.3d 794, 796 (2d Cir. 1999). Any amended complaint filed by plaintiff must bear his original signature and must be a complete pleading that will supersede and replace the original complaint in its entirety. The amended pleading must also name one or more defendants and set forth a short and plain statement of the facts on which he relies in support of his claim that the individual named as a defendant engaged in misconduct or wrongdoing that violated plaintiff's constitutional rights.

Plaintiff is advised that, if he fails to submit an amended complaint within 30 days of the filing date of this Decision and Order, the Court will, without further order, dismiss this action without prejudice for failure to state a claim on which relief may be granted pursuant to Sections 1915(e)(2)(B) and 1915A(b)(1).

### IV. Motion for Preliminary Injunction

"In general, district courts may grant a preliminary injunction where a plaintiff demonstrates 'irreparable harm' and meets one of two related standards: 'either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of

---

[5] Because DOCCS is not amenable to suit as a matter of law, no amendment to plaintiff's pleading could cure that deficiency. Accordingly, all claims asserted against that defendant are dismissed with prejudice.

its claims to make them fair ground for litigation, plus a balance of the hardships tipping decidedly in favor of the moving party.'" *Otoe-Missouria Tribe of Indians v. N.Y.S. Dep't of Fin. Servs.*, 769 F.3d 105, 119 (2d Cir. 2014) (quoting *Lynch v. N.Y.*, 589 F.3d 94, 98 (2d Cir. 2009)). When the moving party seeks a "mandatory injunction that alters the status quo by commanding a positive act," the burden is heightened. *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 406 (2d Cir. 2011) (internal quotation marks omitted). A mandatory preliminary injunction "should issue only upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief." *Cacchillo*, 638 F.3d at 406 (internal quotation marks omitted).

"'[T]he single most important prerequisite for the issuance of a preliminary injunction'" is a showing that the moving party will suffer irreparable harm. *Bisnews AFE (Thailand) Ltd. v. Aspen Research Grp. Ltd.*, 437 F. App'x 57, 58 (2d Cir. 2011) (quoting *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009)). Speculative injury is not the province of injunctive relief. *City of L.A. v. Lyons*, 461 U.S. 95, 111-12 (1983). Rather, a plaintiff seeking to satisfy the irreparable harm requirement must demonstrate that, "absent a preliminary injunction [he or she] will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm." *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007) (internal quotation marks omitted).

In this case, plaintiff's motion fails to allege that he will suffer irreparable harm without a preliminary injunction. PI Motion at 1-2. Instead, plaintiff merely requests an injunction enjoining defendants from retaliating against him for commencing this lawsuit against them. PI Motion at 1-2. Such a request, however, amounts to an "obey the law" injunction that is

not favored in this Circuit. *See, e.g., S.C. Johnson & Son, Inc. v. Clorox Co.*, 241 F.3d 232, 240 (2d Cir. 2001). Accordingly, plaintiff's motion for a preliminary injunction is denied.

## V. CONCLUSION

**WHEREFORE** it is hereby

**ORDERED** that plaintiff's IFP application (Dkt. No. 6) is **GRANTED**.[6] The Clerk shall provide the superintendent of the prison facility in which plaintiff is currently confined with a copy of plaintiff's inmate authorization form (Dkt. No. 8), and notify the official that this action has been filed and that plaintiff is required to pay the entire statutory filing fee of $350.00 pursuant to 28 U.S.C. § 1915;[7] and it is further

**ORDERED** that the Clerk shall provide a copy of plaintiff's inmate authorization form (Dkt. No. 8) to the Financial Deputy of the Clerk's Office; and it is further

**ORDERED** that plaintiff's complaint is **DISMISSED without prejudice** for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1), except that plaintiff's claims asserted against defendant DOCCS is **DISMISSED with prejudice**, and the Clerk is directed to **TERMINATE** DOCCS from the docket; and it is further

**ORDERED** that, in the event plaintiff fails to file an amended complaint **within 30 days** of the date of this Decision and Order, the Clerk shall close the action without further Order from the Court; and it is further

---

[6] Plaintiff should note that, although his IFP application has been granted, he will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

[7] While Section 1915 permits indigent litigants to commence a civil action in federal court without prepayment of the filing fee, those litigants "must subsequently pay the fee, to the extent [they are] able to do so, through periodic withdrawals from [their] inmate accounts." *Cash*, 2010 WL 5185047, at *1 (citing 28 U.S.C. § 1915(b); *Harris*, 607 F.3d at 21.

**ORDERED** that plaintiff's motion for a preliminary injunction (Dkt. No. 4) is **DENIED**; and it is further

**ORDERED** that the Clerk serve a copy of this Decision and Order on plaintiff by regular mail.

**IT IS SO ORDERED.**

Dated: May 3, 2019
      Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge