UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MARK EDWARDS,

                                        Plaintiff,

                v.                                                    9:19-CV-0254
                                                                      (MAD/ATB)

ANTHONY ANNUCCI, et al.,

                                        Defendants.
_____

APPEARANCES:

MARK EDWARDS
Pro Se Plaintiff
05-A-1980
Great Meadow Correctional Facility
Box 51
Comstock, NY 12821

MAE A. D'AGOSTINO
United States District Judge

## DECISION AND ORDER

### I.    INTRODUCTION

Pro se plaintiff Mark Edwards ("plaintiff"), a New York State inmate, commenced this

civil rights action on or about February 21, 2019, with the filing of a complaint, Dkt. No. 1,

accompanied by an application for leave to proceed in forma pauperis ("IFP"), Dkt. No. 2.

Although the action was administratively closed on February 22, 2019, due to plaintiff's

failure to submit a complete IFP application, Dkt. No. 5, the Court reopened the action upon

receipt of plaintiff's second IFP application, Dkt. Nos. 6, 9.  Following review of the complaint

and second IFP application pursuant to 28 U.S.C. § 1915 ("Section 1915") and 28 U.S.C. §

1915A ("Section 1915A"), the Court issued a Decision and Order on May 3, 2019, granting

plaintiff's IFP application and dismissing the complaint with leave to amend. Dkt. No. 11

("May Order"). Plaintiff availed himself of the opportunity to amend his pleading, and the

Court received plaintiff's amended complaint on or about June 3, 2019. Dkt. No. 12 ("Am.

Compl."). The amended complaint names the following nine individuals as defendants, all of

whom are employed by the New York State Department of Corrections and Community

Supervision ("DOCCS"): (1) Anthony Annucci, (2) Chris Miller, (3) C.O. Green, (4) Captain

LaMora, (5) Sergeant Cross, (6) Justin Reil, (7) Zachary Bonzie, (8) Kevin Varin, and (9) H.

Drolette.[1] *Id.* at 1-2. The Clerk has now forwarded the amended complaint to the Court for

review.

## II.    DISCUSSION

### A.    Legal Standard

The legal standard governing the review of a pro se inmate-plaintiff's complaint

pursuant to Sections 1915 and 1915A was discussed at length in the May Order and will not

be restated in this Decision and Order. *See* May Order at 3-4.

### B.    Summary of the Amended Complaint

At all times relevant to this action, plaintiff was incarcerated at Great Meadow

Correctional Facility ("Great Meadow C.F.") and Clinton Correctional Facility ("Clinton C.F."),

prisons operated by DOCCS. *See generally* Am. Compl. The following facts are as alleged

in the amended complaint.

---

[1] The Clerk of the Court is respectfully directed to modify the docket to reflect that the above-listed individuals are named defendants.

### 1. Great Meadow C.F.

#### a. Mail Interference

Plaintiff's mail has been interfered with by unidentified prison officials at Great Meadow C.F. on at least "10 or more" occasions "[w]ithin the past year." Am. Compl. at 4-5. Plaintiff cites four examples of where his mail was either opened without authorization or delayed. *Id.* at 4, 6. Plaintiff alleges that defendant DOCCS Acting Commissioner Anthony Annucci and defendant Great Meadow C.F. Superintendent Chris Miller are responsible for the mail interference because (1) defendant Miller "has authorized his employees at [Great Meadow C.F.] to take actions to attempt to cover-up the [interference]"; and (2) defendant Annucci "is allowing defendant . . . Miller. . . to continue to authorize the [interference]." *Id.* at 3-4.

#### b. Sexual Assault

On or about October 4, 2018, defendant Great Meadow C.F. Correctional Officer ("C.O.") Green gratuitously and unnecessarily touched plaintiff's "bare penis" during a pat-frisk. Am. Compl. at 7.

### 2. Clinton C.F.

On or about July 30, 2013, while plaintiff was incarcerated at Clinton C.F., defendant Clinton C.F. Sergeant Reil ordered plaintiff to exit a room and enter a hallway. Am. Compl. at 8. Upon entering the hallway, defendant Reil "activated a facility emergency alarm" for no reason, and plaintiff was thereafter "attacked by no less than 15-20 responders." *Id.* Defendant Clinton C.F. Captain LaMora, defendant Clinton C.F. Sergeant Cross, and defendants Clinton C.F. C.Os. Drollette, Varin, and Bonzie became involved in the use of

force incident on that date, which included blows to the head and sexual assault. *Id.* at 9-13.

According to plaintiff, "defendants, every one of whom are white male, carried out the[

assault] motivated by racial hatred and prejudice." *Id.* at 19.

Following the use of force incident, defendant Reil issued plaintiff a false inmate

misbehavior report ("IMR") alleging that plaintiff attempted to strike him on July 30, 2013. *Id.*

at 12. Defendant LaMora presided over the disciplinary hearing concerning the IMR. *Id.* at

13. Defendant LaMora refused to provide plaintiff with certain documents he requested to

assist him in his defense until after the hearing concluded. *Id.* In addition, liberally

construed, the amended complaint alleges that defendant LaMora was not an impartial

hearing officer in light of his participation in the use of force incident that gave rise to the

IMR. *Id.* at 14. At the conclusion of the disciplinary hearing, defendant LaMora found

plaintiff guilty of the violations asserted in the IMR and sanctioned plaintiff to eight months

confinement in the Special Housing Unit ("SHU"). *Id.* at 14. Plaintiff's appeal of the hearing

determination to defendant Annucci was denied. *Id.* at 14-15.

On an unidentified date, plaintiff commenced a legal action concerning the use of

force incident in July 2013 at Clinton C.F. in the New York Court of Claims ("Court of

Claims"). Am. Compl. at 15. Plaintiff alleges that the nature of the action was a civil rights

claim arising under 42 U.S.C. § 1983 ("Section 1983"). *Id.* Although the status of that

lawsuit is unclear based on the allegations in plaintiff's amended complaint, it appears that

the matter remains open and pending in the Court of Claims. *See id.* at 15-17.

In connection with plaintiff's Court of Claims lawsuit, plaintiff was transferred from

Great Meadow C.F. to Clinton C.F. in April 2019 for a court proceeding. Am. Compl. 16-17.

Plaintiff remained confined in Clinton C.F. between approximately April 8, 2019 and April 16, 2019. *Id.* at 16-18. On or about April 11, 2019, plaintiff received a false IMR authored by defendants Reil and Drollette "accusing him of 'threats' and 'creating a disturbance[.]'" *Id.* at 17.

### 3. Unknown

Plaintiff's amended complaint alleges that while he was being transferred back to Great Meadow C.F. from Clinton C.F. between April 16, 2019 and April 17, 2019, "defendants . . . stole[] or destroyed plaintiff's court property for the purpose of destroying evidence" and intimidating him. Am. Compl. at 18.

Plaintiff's amended complaint alleges that he is, and has been, the subject of retaliation by unidentified individuals because he "ha[s] charges of 'Assault of Staff' readily listed upon his departmental records." Am. Compl. at 23.

Liberally construed, plaintiff's amended complaint asserts the following causes of action: (1) First Amendment mail interference against defendants Annucci and Miller; (2) Eighth Amendment sexual assault against defendant Green; (3) Eighth Amendment excessive force against defendants Reil, LaMora, Cross, Drollette, Varin, and Bonzie; (4) Fourteenth Amendment procedural due process against defendants LaMora and Annucci; (5) Fourteenth Amendment equal protection against defendants Reil, LaMora, Cross, Drollette, Varin, and Bonzie; (6) issuance of a false IMR against defendants Reil and Drollette; (7) destruction of legal work product; and (8) retaliation.

### C.     Analysis

Plaintiff brings this action pursuant to Section 1983, which establishes a cause of

action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. "Section 1983 itself creates no substantive rights[ but] provides . . . only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James,* 13 F.3d 515, 519 (2d Cir. 1993)

### 1. Mail Interference

Plaintiff asserts First Amendment mail interference claims against defendants Annucci and Miller in their supervisory capacities as DOCCS Acting Commissioner and Great Meadow C.F. Superintendent, respectively. Am. Compl. at 4-6. More specifically, plaintiff alleges that (1) defendant Miller authorizes Great Meadow C.F. employees to delay or tamper with plaintiff's mail; (2) defendant Miller authorizes Great Meadow C.F. to "cover-up the [interference]"; (3) defendant Annucci "allow[s] defendant . . . Miller . . . to continue to authorize the obstruction of plaintiff's correspondence"; and (4) plaintiff "has made multiple complaints to both defendants Annucci and Miller, giving notice to each of the precarious and unscrupulous mail delivery issues and neither have responded to plaintiff's legitimate concerns." *Id.*

"Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [Section] 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citing *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991); *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977)). As the Supreme Court has noted, a defendant may only be held accountable for his actions under Section 1983. *See Iqbal*, 556 U.S. at 683 ("[P]etitioners cannot be held liable unless they themselves acted on account of a constitutionally protected characteristic."). In order to prevail on a Section 1983 cause of

6

action against an individual, a plaintiff must show "a tangible connection between the acts of a defendant and the injuries suffered." *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). With respect to claims asserted against supervisors like defendants Annucci and Miller, it is well settled that "vicarious liability is inapplicable to . . . [Section] 1983 suits." *Iqbal* 556 U.S. at 676. Prior to *Iqbal*, the Second Circuit held that supervisory personnel may be considered "personally involved" only if they (1) directly participated in the violation, (2) failed to remedy that violation after learning of it through a report or appeal, (3) created, or allowed to continue, a policy or custom under which the violation occurred, (4) had been grossly negligent in managing subordinates who caused the violation, or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that the violation was occurring. *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (citing *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986)).[3]

Plaintiff clearly purports to assert cognizable First Amendment mail interference claims against defendants Annucci and Miller by relying on the second and fourth prongs of the *Colon* considerations. *See* Am. Compl. at 4-6. With due regard to plaintiff's pro se status, however, the amended complaint fails to allege sufficient facts to support a plausible supervisor liability claim against either of the defendants. With respect to the second prong,

---

[3] The Second Circuit has not yet addressed how the Supreme Court's decision in *Iqbal* affected the standards in *Colon* for establishing supervisory liability. *See Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013) (noting that *Iqbal* may have "heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations" but not reaching the impact of *Iqbal* on *Colon* because the complaint "did not adequately plead the Warden's personal involvement even under *Colon*); *see also Hogan v. Fischer*, 738 F.3d 509, 519 n.3 (2d Cir. 2013) (expressing "no view on the extent to which [*Iqbal*] may have heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations[.]" (citing *Grullon*, 720 F.3d at 139)). Absent any authority to the contrary, the Court has applied *Colon* in this case.

it is well settled in this Circuit that personal involvement for purposes of Section 1983 cannot be based allegations that an official ignored a plaintiff's letter or grievance. *See, e.g., Toliver v. Dep't of Corrs.*, No. 10-C-6298, 2012 WL 4510635, at *8 (S.D.N.Y. Apr. 10, 2012); *Atkins v. Cnty. of Orange*, 251 F. Supp. 23d 1225, 1233 (S.D.N.Y. 2003). With respect to the fourth prong, the amended complaint contains only vague and conclusory allegations concerning defendants' management of subordinates. In particular, plaintiff alleges only that defendant Annucci "is allowing defendant . . . Miller" to authorize Great Meadow C.F. employees to interfere with plaintiff's mail. Am. Compl. at 4. Similarly, according to plaintiff, "[d]efendant Miller "authorize[s] his employees" to conceal the mail interference. *Id.* at 4-5. There are no allegations concerning who at the "employee" level is responsible for interfering with plaintiff's mail or that plaintiff made defendants Annucci and Miller aware of the identities of those individuals. In addition, it is not clear based on the amended complaint the contents of plaintiff's letters to Annucci and Miller. For example, plaintiff does not allege that he included specific dates of mail interference or descriptions of the interference. As alleged in the amended complaint, plaintiff only notified defendants Annucci and Miller of "precarious and unscrupulous mail delivery issues." *Id.* at 5. Without more, the allegations in the complaint fail to plausibly allege that defendants Annucci and Miller were grossly negligent in managing their subordinates for purposes of Section 1983 supervisor liability.

Accordingly, plaintiff's First Amendment mail interference claim is dismissed for failure to state a claim upon which relief may be granted pursuant to Sections 1915(e)(2)(B)(ii) and 1915A(b)(1).

### 2. Sexual Assault

Mindful of the Second Circuit's instruction that a pro se plaintiff's pleadings must be

liberally construed, *see, e.g., Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d

Cir. 2008), the Court will require a response to plaintiff's Eighth Amendment sexual assault

claim asserted against defendant Green arising from allegations that defendant Green

unnecessarily grabbed plaintiff's bare penis during a pat-frisk search at Great Meadow C.F.

on October 4, 2018. Am. Compl. at 7-9. In so ruling, the Court expresses no opinion as to

whether plaintiff's claim can withstand a properly filed dispositive motion.

### 3. Claims Arising Out of Plaintiff's Confinement in Clinton C.F. (Excessive Force, Procedural Due Process, Equal Protection, Issuance of False IMR)

"The applicable statute of limitations for § 1983 actions arising in New York requires

claims to be brought within three years." *Pinaud v. Cnty. of Suffolk*, 52 F.3d 1139, 1156 (2d

Cir. 1995). A Section 1983 cause of action accrues "'when the plaintiff knows or should

know of the injury that is the basis of the cause of action.'" *Covington v. City of N.Y.*, 916 F.

Supp. 282, 285 (S.D.N.Y. 1996) (quoting *Woods v. Candela*, 13 F.3d 574, 575 (2d Cir.

1994)). "Thus, in determining when the statute begins to run, the proper focus is on the time

of the [wrongful] act, not the point at which the consequences of the act become painful."

*Convington*, 916 F. Supp. at 285 (internal quotation marks omitted).

In rare instances, the doctrine of equitable tolling may be invoked to defeat a defense

that the action was not timely filed. *Abbas v. Dixon*, 480 F.3d 636, 642 (2d Cir. 2007); *Doe v.

Menefee*, 391 F.3d 147, 159 (2d Cir. 2004); *see also Gonzalez v. Hasty*, 651 F.3d 318, 322

(2d Cir. 2011) ("Equitable tolling is an extraordinary measure that applies only when plaintiff

is *prevented from filing* despite exercising that level of diligence which could reasonably be

expected in the circumstances." (internal quotation marks omitted)).[4] The equitable tolling

doctrine applies where a plaintiff demonstrates that he was induced by fraud,

misrepresentations, or deception to refrain from timely commencing an action, and that the

plaintiff acted with due diligence throughout the period to be tolled.[5] *Abbas*, 480 F.3d at 642;

*see also Walker v. Jastremski*, 430 F.3d 560, 564 (2d Cir. 2005). The plaintiff bears the

burden of establishing equitable tolling. *Abbas*, 480 F.3d at 642.

Here, plaintiff's claims arising out of his confinement in Clinton C.F. stem from a use of

force incident that occurred on July 30, 2013, and a subsequent disciplinary hearing

concerning an IMR plaintiff was issued following the use of force incident. *See* Am. Compl.

at 8-16. The three-year limitations period for asserting Eighth Amendment excessive force

and Fourteenth Amendment equal protection claims arising from the incident on July 30,

2013, expired, at the latest, on July 30, 2017, approximately 20 months before plaintiff

commenced this action in February 2019. With respect to plaintiff's false IMR and procedural

due process claims, although the complaint does allege a specific date on which defendant

Reil issued plaintiff the IMR or the date on which defendant LaMora found plaintiff guilty of

the charges contained in the IMR,[6] in light of the fact that the use-of-force incident that

---

[4] The Second Circuit has held that "the applicable statute of limitations must be tolled while a prisoner completes the mandatory exhaustion process" required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997(a). *Gonzalez*, 651 F.3d at 323-24; *see also Woodford v. Ngo*, 548 U.S. 81, 88-103 (2006) (concluding that "proper" exhaustion for purposes of the PLRA means that the inmate-plaintiff must complete the administrative review process in accordance with the applicable prison rules, including deadlines, as a prerequisite to bringing suit in federal court).

[5] It is well settled that "[r]outine experiences of prison life do not qualify as extraordinary circumstances" for purposes of equitable tolling. *Brown v. Bullis*, No. 11-CV-0647, 2013 WL 1294488, at *4 (N.D.N.Y. Mar. 26, 2013).

[6] The Court need not decide at this juncture whether the accrual date of a procedural due process claim is the date on which the hearing officer renders his determination or the date on which the plaintiff received a final decision concerning his appeal of the disciplinary hearing determination. *See, e.g., Best v. Newton*, 15-CV-

served as the basis for the IMR occurred on July 30, 2013, it appears more than likely that plaintiff's false IMR and procedural due process claims accrued in the second-half of 2013. Therefore, the limitations period for those claims likely expired in 2017, over a year before plaintiff filed his original complaint in this action. Unless the limitations period is subject to equitable toling, plaintiff's claims arising out of his confinement in Clinton C.F. as asserted in the amended complaint are subject to dismissal as time-barred.

Even liberally construed, and with due regard to plaintiff's pro se status, the facts alleged in the amended complaint are not sufficient to plausibly suggest that equitable tolling is warranted for any of the claims arising from plaintiff's confinement in Clinton C.F. Plaintiff does not "articulate any acts by defendants that prevented him from timely commencing suit." *Abbas*, 480 F.3d at 642 (internal quotation marks and alteration omitted). Notably, plaintiff was able to, and did, commence "a claim under [Section 1983] in the [New York] Court of Claims" following the incidents at Clinton C.F., and the amended complaint offers no justification for plaintiff's failure to file this lawsuit until February 2019. Am. Compl. at 15.

In light of the foregoing, the Court concludes that this lawsuit was not timely filed with respect to the claims arising out of plaintiff's confinement in Clinton C.F. in or around July 2013, and therefore those claims are dismissed for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1).

### 4. Issuance of a False IMR in April 2019 at Clinton C.F.

Although not time-barred (like plaintiff's false IMR claim asserted against defendant

---

4316, 2016 WL 5416505, at *4 (S.D.N.Y. Sept. 28, 2016) (noting that some courts in this Circuit set the accrual date at the date of the disciplinary hearing while other courts set the accrual date on the date administrative appeals were decided).

Reil arising from the use of force incident at Clinton C.F. on July 30, 2013), plaintiff's false

IMR claims asserted against defendants Reil and Drollette arising from allegations that the

IMR issued to him on or about April 11, 2019, are subject to dismissal on other grounds.

Claims arising from allegations that a defendant issued an inmate-plaintiff a false

misbehavior report, on their own, are not cognizable under Section 1983. *See, e.g., Boddie*

*v. Schneider*, 105 F.3d 857, 862 (2d Cir. 1997) ("[A] prison inmate has no general

constitutional right to be free from falsely accused in a misbehavior report."). Allegations

concerning a false misbehavior report are generally only cognizable when there are other

allegations triggering a First Amendment retaliation claim or Fourteenth Amendment due

process claim. *See, e.g., Boddie*, 105 F.3d at 862; *Franco v. Kelly*, 854 F.2d 584, 589 (2d

Cir. 1988); *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986). Because plaintiff's

amended complaint alleges only that the IMR issued by defendants Reil and Drollette in April

2019 was "false[]", Am. Compl. at 17, any claim arising from those allegations is dismissed

for failure to state a claim upon which relief may be granted pursuant to Sections

1915(e)(2)(B)(ii) and 1915A(b)(1).

### 5. Destruction of Legal Work

To the extent that plaintiff purports to assert a claim against any of the defendants

stemming from allegations that his "court property" was "stolen or destroyed" between the

time he was transferred from Clinton C.F. back to Great Meadow C.F. in or around April

2019, Am. Compl. at 18-19, the claim is subject to dismissal for three reasons.

First, plaintiff has not alleged that any of the named defendants were involved, either

directly or indirectly, in the loss of plaintiff's property. Am. Compl. at 18-19. Instead, plaintiff

12

alleges that he "has reason to believe [that] defendants," as a collective, "have stolen or destroyed [his] court property." *Id.* As noted above in Part II.C.1. of this Decision, the "[p]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [Section] 1983." *Wright*, 21 F.3d at 501. Additionally, Rule 8 of the Federal Rules of Civil Procedure mandates that a complaint include sufficient allegations to provide "each defendant fair notice of what the plaintiff's claim is and ground upon which it rests." *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) (internal quotation marks omitted); *see also Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995). Because the amended complaint in this case only vaguely refers to the individuals responsible for destroying plaintiff's court documents as "defendants," Am. Compl. at 18-19, any claim arising from those allegations is not sufficiently stated and therefore dismissed. *See Alejo v. Heller*, 328 F.3d 930, 936 (7th Cir. 2003) (affirming the district court's dismissal of the plaintiff's claim asserted against a particular named defendant for lack of personal involvement, where the complaint accused only "groups of unknown 'John Does' of participating in the allegedly unconstitutional conduct"); *Atuahene*, 10 F. App'x 33, 34 (2d Cir. 2001) ("By lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct, [the plaintiff]'s complaint failed to satisfy th[e] minimum standard [set forth in Rule 8]."); *Ying Li v. City of N.Y.*, 246 F. Supp. 3d 578, 598 (E.D.N.Y 2017) ("Pleadings that do not differentiate which defendant was involved in the unlawful conduct are insufficient to state a claim.").

The second ground for dismissing this claim is that the unauthorized intentional destruction of prisoner's property cannot give rise to constitutional claims if sufficient post-

deprivation remedies are available to address the claim. *Hudson v. Palmer*, 468 U.S. 517, 531-33 (1984) (citing *Parratt v. Taylor*, 451 U.S. 527, 541 (1981)); *see also Rivera-Powell v. N.Y.C. Bd. of Elections*, 470 F.3d 458, 465 (2d Cir. 2006) ("When the state conduct in question is random and unauthorized, the state satisfies procedural due process requirements so long as it provides meaningful post-deprivation remedy."). "New York in fact affords an adequate post-deprivation remedy in the form of, *inter alia*, a Court of Claims action." *Jackson v. Burke*, 256 F.3d 93, 96 (2d Cir. 2001); *see also Davis v. N.Y.*, 311 Fed. App'x 397, 400 (2d Cir. 2009) ("The existence of this adequate post-deprivation state remedy would thus preclude [plaintiff's] due process claim under § 1983 [for lost personal property].").

Third, to the extent that the allegations in the amended complaint concerning the theft or destruction of "court documents" purports to assert a First Amendment court access claim, the amended complaint fails to plausibly allege that he suffered any prejudice from the loss of those documents. *See, e.g., Smith v. O'Connor*, 901 F. Supp. 644, 649 (S.D.N.Y. 1995) ("To state a claim that his constitutional right to access the court was violated, plaintiff must allege facts [plausibly suggesting] that . . . [defendants' conduct] materially prejudiced a legal action he sought to pursue."). Instead, plaintiff alleges only that the defendants destroyed his property for the purpose of "influcenc[ing], delay[ing], or prevent[ing] plaintiff from presenting evidence in an official proceeding." Am. Compl. at 19. The amended complaint does not, however, allege that plaintiff actually experienced any harm in connection with any pending legal action as a result of the destruction of his legal papers. *Id.*

For the foregoing reasons, any claim arising from plaintiff's allegations that

14

"defendants" stole or destroyed his "court papers" in and around April 2019 is dismissed for failure to state a claim upon which relief may be granted pursuant to Sections 1915(e)(2)(B)(ii) and 1915A(b)(1).

### 6. Retaliation

Claims of retaliation find their roots in the First Amendment. *Gill v. Pidlypchak*, 389 F.3d 379, 380-81 (2d Cir. 2004). To state a cognizable First Amendment retaliation claim, a plaintiff's complaint must plausibly allege "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Gill*, 389 F.3d at 380 (internal quotation marks omitted); *accord, Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009).

With due regard to plaintiff's pro se status, his retaliation claim must be dismissed. In support of this claim, plaintiff's amended complaint alleges as follows:

> It is also reasonable to assume that plaintiff is a target for retaliation having charges of 'Assault on Staff' readily listed upon his departmental records. Plaintiff has in fact experienced being questioned by random corrections officers, throughout his incarceration, asking him: 'You like assaulting staff? You think you're a tough guy? This guy likes assaulting staff', etc.

Am. Compl. at 23. Even liberally construed, these allegations do not plausibly allege that (1) plaintiff engaged in constitutionally protected conduct, (2) any specific alleged adverse action implicating any of the defendants, or (3) a causal connection between constitutionally protected conduct and any of the defendants' conduct as alleged in the amended complaint. Accordingly, plaintiff's retaliation claims are dismissed for failure to state a claim upon which relief may be granted pursuant to Sections 1915(e)(2)(B)(ii) and 1915A(b)(1).

15

## III. CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that plaintiff's amended complaint (Dkt. No. 12) is **ACCEPTED for filing**; and it is further

**ORDERED** that only plaintiff's Eighth Amendment sexual assault claim asserted against defendant Green **SURVIVES initial review** pursuant to 28 U.S.C. § 1915 and 28 U.S.C. § 1915A; and it is further

**ORDERED** that the Clerk shall issue a summons and forward it to the U.S. Marshal for service of process upon defendant Green. The Clerk shall forward a copy of the summons and amended complaint by mail to the New York State Attorney General, together with a copy of this Decision and Order; and it is further

**ORDERED** that a response to the amended complaint shall be filed by defendant Green or his counsel as provided for in the Federal Rules of Civil Procedure; and it is further

**ORDERED** that, except as to the foregoing, the remainder of the claims asserted in the amended complaint are **DISMISSED without prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1);[7] and it is further

**ORDERED** that the Clerk of the Court **TERMINATE from the docket** the following defendants: (1) Annucci, (2) Miller, (3) LaMora, (4) Cross, (5) Reil, (6) Bonzie, (7) Varin, and (8) Drollette; and it is further

---

[7] Should plaintiff seek to pursue any of the claims dismissed without prejudice, he must file a second amended complaint in accordance with Rule 15 of the Federal Rules of Civil Procedure and Rule 4 of the Local Rules of Practice for this Court. Any second amended complaint, which shall supersede and replace the amended complaint in its entirety, must allege claims of misconduct or wrongdoing against each named defendant that plaintiff has a legal right to pursue, and over which jurisdiction may properly be exercised. Any second amended complaint filed by plaintiff must also comply with the pleading requirements of Rules 8 and 10 of the Federal Rules of Civil Procedure.

**ORDERED** that all pleadings, motions, and other documents relating to this action must bear the case number assigned to this action and be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367.  Plaintiff must comply with requests by the Clerk's Office for any documents that are necessary to maintain this action.  All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions; motions will be decided on submitted papers, without oral argument, unless otherwise ordered by this Court.  **Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel, in writing, of any change in his address; his failure to do so may result in the dismissal of this action**; and it is further

**ORDERED** the Clerk shall serve a copy of this Decision and Order on plaintiff by regular mail.

**IT IS SO ORDERED.**

Dated: July 15, 2019
        Albany, New York

Mae A. D'Agostino
U.S. District Judge